IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| C.T., an individual, : | |
| : | Case No. 2:21-cv-05022 |
| Plaintiff, : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Elizabeth P. Deavers |
| RED ROOF INNS, INC., *et al.* : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

This matter is before this Court on Plaintiff's Motion for Leave to Appeal pursuant to 28 U.S.C. § 1292(b). (ECF No. 162). For the following reasons, Plaintiff's Motion is **DENIED**. In accord with this Court's February 16, 2021 Opinion and Order (ECF No. 127), this matter is hereby **TRANSFERRED** to the Middle District of Florida.

I.     BACKGROUND

A. Factual Background

Plaintiff C.T. alleges she was trafficked for sex from approximately 2008 to 2010 at Days Inn, Travelodge, Best Western, La Quinta, and Red Roof Inn properties in the Fort Myers, Florida area. (ECF No. 65, ¶ 143). At the relevant time, these hotels were owned, supervised, or and/or operated by Defendants Red Roof Inns, Inc. ("Red Roof"), Wyndham Hotels and Resorts, Inc. ("Wyndham"), Best Western International, Inc. ("BWI"), La Quinta Holdings, Inc. ("LQH"), La Quinta Franchising, LLC ("LQF"), and La Quinta Management, LLC ("LQM"). (*Id.*, ¶¶ 11–14) Plaintiff now seeks to hold these hotels liable under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).

1

Plaintiff alleges that these hotel Defendants knew that sex trafficking occurred frequently on their properties and failed to prevent it, and that they knew or should have known of C.T.'s trafficking. Plaintiff points to behavior that she alleges hotel staff should have recognized as signs of her trafficking: physical signs including physical deterioration, bruising, and lack of eye contact, and common indicators of commercial sex activity. (*Id.*, ¶¶ 148–153). C.T. alleges that these hotels and their parent companies did not take adequate measures to prevent human trafficking and demonstrated "actual and/or constructive knowledge of the rampant culture of sex trafficking." (*Id.*, ¶¶ 135, 138(o), 139(l), 140(k), 141(l)).

Plaintiff also argues that the Hotel Defendants have been participating in an industry-wide conspiracy to respond inadequately to sex trafficking. She alleges that state and national trade associations, such as Defendants Ohio Hotel Lodging Association ("OHLA") and American Hotel & Lodging Association ("AHLA"), served as a forum for the alleged co-conspirators to discuss efforts related to human trafficking and avoiding compliance with federal trafficking laws. (*Id.*, ¶¶ 55–56, 58). She also alleges that Defendants' employees exchanged emails related to sex trafficking during the relevant time period. (*Id.*, ¶ 50). C.T. contends that the collective failure of Defendants "to articulate a policy, process, or procedure that would measure the extent of the trafficking problem at their branded locations" is the result of the industry wide conspiracy. (*Id.*, ¶ 62). She maintains that the Hotel Defendants "collectively conspired and declined to implement policies that would likely have the effect of reducing the billions of dollars in sex trafficking profits." (*Id.*, ¶ 63).

## B. Procedural Background

C.T. filed her Complaint against the Hotel Defendants on December 8, 2019. (ECF No. 1). In early 2020, the Hotel Defendants filed motions to dismiss the action. (ECF Nos. 19, 23, 24, 51).

C.T. then sought leave to file an amended complaint, which the Magistrate Judge granted. (ECF Nos. 54, 64). Plaintiff's Amended Complaint added conspiracy allegations against the Hotel Defendants and added OHLA and AHLA as additional defendants. (ECF No. 65). Subsequently, the Hotel Defendants and OHLA filed renewed motions to dismiss the Amended Complaint and alternative Motions to Transfer. (ECF Nos. 73, 79, 80, 103).

On February 16, 2021, this Court issued its Opinion and Order on the Motions to Dismiss, finding that it did not have general or specific personal jurisdiction over BWI and Wyndham, the out-of-state defendants, on the facts alleged. (ECF No. 127 at 13). In reaching its holding on personal jurisdiction, this Court found that C.T. had not adequately alleged "conspiracy jurisdiction." (*Id.* at 11–13). Further, this Court determined that the word "extraterritorial" in § 1596 of the TVPRA, the provision Plaintiff argued provided independent grounds for nationwide service of process under Federal Rule of Civil Procedure 4(k)(1)(C), served only to allow Plaintiff to bring suit for conduct occurring outside the United States. (*Id.* at 7). Rather than dismiss BWI and Wyndham as parties to the litigation, this Court granted their motions to transfer venue to the Middle District of Florida. (*Id.* at 13–15).

That same day, C.T. filed a Notice of Intent to File for Reconsideration and/or Motion for Leave to Amend the Complaint (ECF No. 128), which she subsequently filed on March 2, 2021 (ECF No. 129). Plaintiff specifically sought clarification of this Court's previous opinion insofar as it did not directly address Plaintiff's argument that the TVPRA provides for nationwide service of process. (ECF No. 134 at 12). This Court held in abeyance the transfer of the case while it considered Plaintiff's Motion. On July 1, 2021, this Court denied Plaintiff's Motion for Clarification, Reconsideration, and/or to Amend the Complaint and transferred the case to the Middle District of Florida. (ECF No. 134). This Court disagreed with Plaintiff's argument that §

1595 of the TVPRA provided for nationwide service of process, reasoning that such a reading directly contradicted basic principles of statutory interpretation because the provision actually provided for a grant of subject-matter jurisdiction over potential perpetrators of offenses committed extraterritorially already present in a U.S. jurisdiction. (*Id.* at 18). Also, the construction of this provision of the TVPRA was inapposite with the majority of other federal statutes cited in which Congress specifically provided for nationwide service of process. (*Id.* at 20).

The case was transferred to the Middle District of Florida on July 1, 2021. (ECF No. 136). On July 14, 2021, Plaintiff filed a Petition for Interlocutory Appeal concerning this Court's July 1, 2021 order. (ECF No. 149 at 3). Plaintiff filed a notice with the Middle District of Florida that she had filed an appeal with the Sixth Circuit (ECF No. 142), and that court stayed the matter pending further order and notification that the appeal in the Sixth Circuit was resolved. (ECF No. 143). On August 3, 2021, C.T. filed a motion for voluntary dismissal of that appeal, which motion was granted by the Sixth Circuit. *See C.T. v. Red Roof Inns, Inc. et al.*, No. 2:19-cv-5384, 2021 WL 2942483 (S.D. Ohio July 1, 2021), *appeal dismissed*, No. 21-3635, 2021 WL 4739619 (6th Cir. Aug. 4, 2021). On August 5, 2021, without informing the Middle District of Florida that the appeal had been dismissed (ECF No. 156 at 4), C.T. filed a Motion to Change Venue back to the Southern District of Ohio to allow this Court to consider "permitting the Sixth Circuit Court of Appeals to review the Nationwide Service of Process issue under the TVPRA." (ECF No. 149). On September 30, 2021, the Middle District of Florida granted Plaintiff's motion to transfer the case back to the Southern District of Ohio to allow this Court to consider C.T.'s petition for interlocutory appeal. (ECF No. 156). The case was transferred on October 1, 2021. (ECF No. 157).

On June 21, 2021, Plaintiff filed a Motion for Leave to Appeal pursuant to 28 U.S.C. § 1292(b) asking this court to certify for appeal the following question: "Whether Section 1596 of

the TVPRA authorizes nationwide service of process." (ECF No. 162). Defendants BWI, Red Roof, and Wyndham responded in opposition and Plaintiff replied. (ECF Nos. 165, 166, 167, 168). Therefore, this matter is ripe for review.

## II.   STANDARD OF REVIEW

Interlocutory appeals are generally disfavored and are reserved for "exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). As "[a]ttractive as it may be to refer difficult matters to a higher court for advance decision, such a course of action is contrary to our system of jurisprudence." *U.S. ex rel. Elliott v. Brickman Group Ltd., LLC*, 845 F. Supp. 2d 858, 863 (S.D. Ohio 2012) (quoting *Alexander v. Provident Life & Accident Ins. Co.*, 663 F. Supp. 2d 627, 639 (E.D. Tenn. 2009)). As the Sixth Circuit long has held, the legislative history of § 1292(b) makes it "quite apparent" that the statute should be "sparingly applied," as it is "not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Kraus v. Bd. of Cnty. Road Comm'rs*, 364 F. 2d 919, 922 (6th Cir. 1966). A party seeking certification "has the burden of showing exceptional circumstances exist warranting an interlocutory appeal." *Alexander v. Provident Life & Acc. Ins. Co.*, 663 F. Supp. 2d 627, 639 (E.D. Tenn. Oct. 16, 2009).

Under § 1292(b), this Court may certify an interlocutory appeal only when three criteria are satisfied: (1) the "order involves a controlling question of law"; (2) "there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of litigation." 28 U.S.C. § 1292(b); *Cook v. Erie Ins. Co.*, 2021 WL 1056626, at *2 (S.D. Ohio Mar. 19, 2021). If any of these factors is absent, the certification cannot issue. Additionally, "doubts regarding appealability should be resolved in favor of finding that the interlocutory order is not appealable." *In re Nat'l Prescription Opiate Litig.*, 2020 WL 3547011, at *1 (N.D. Ohio June 30, 2020) (internal quotation omitted).

"[E]ven where the statutory criteria are met," the Court still retains "broad discretion to deny certification." *In re Transdigm Grp., Inc. Sec. Litig.*, No. 1:17-cv-1677, 2018 WL 11227556 (N.D. Ohio Jan. 30, 2018) (internal quotation omitted). "Ultimately, allowing certification of an interlocutory appeal lies within the discretion of the district court." *Lang v. Crocker Park, LLC*, No. 1:09-cv-1412, 2011 WL 3297865, at *2 (N.D. Ohio July 29, 2011) (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995)).

### III.   ANALYSIS

Plaintiff petitions this Court for permission to "appeal the orders denying Plaintiff's Motion to Clarify on Motion to Dismiss for Lack of Jurisdiction." (ECF No. 162). Specifically, C.T. certifies the following question for appeal to the Sixth Circuit:

> Whether 28 U.S.C. § 1596 of the TVPRA authorizes nationwide service of process and Sixth Circuit precedent would allow the exercise of personal jurisdiction when a federal statute allows nationwide service of process, and such jurisdiction does not offend constitutional Due Process.

(*Id.* at 3). As detailed more fully below, Plaintiff's argument fails to satisfy the three required criteria to certify a legal question for interlocutory appeal under § 1292(b).

### A.   Controlling Question of Law

Movants first must show that their proposed issue for appeal involves a controlling question of law. To be controlling, "an issue need not necessarily terminate an action," but it must be one that "could materially affect the outcome of the litigation in the district court." *In re Baker & Getty Fin. Servs., Inc.*, 954 F. 2d 1169, 1172 n.8 (6th Cir. 1992) (internal quotations omitted).

First, Plaintiff argues that this is a question of law because it does not require factual analysis, but instead "interpretation of a federal statute and the scope it imposes on TVPRA cases across the country." (ECF No. 162 at 6). Further, she maintains that the question is controlling because it would materially affect the outcome of the litigation in the district court. (*Id.* (citing

6

*Zeneca Ltd. v. Mylan Pharms.*, 124 F. 3d 225 (Fed. Cir. 1997) (nonprecedential order) (permitting the appeal of a certified question concerning district court jurisdiction in infringement actions based on the filing of an Abbreviated New Drug Application (ANDA) with the U.S. Food and Drug Administration under 35 U.S.C. § 271(e)(2)); *In re Baker*, 954 F. 2d at 1172 (permitting appeal of a question on whether bankruptcy courts have jurisdiction to conduct jury trials)).

Defendants Red Roof and BWI respond that the legal questions "of the type envisioned in § 1292(b) . . . generally does not include matters within the discretion of the trial court." (ECF Nos. 166 at 3 (citing *Montgomery City Bd. of City Comm'rs v. Cardinal Health*, No.18-OP-46326, 2021 WL 4198171, at *1 (N.D. Ohio Sept. 15, 2021)); *see also* 165 at 2 (citing *DRFP, LLC. v. Republica Bolivariana De Venez.*, 945 F. Supp. 2d 890, 918 (S.D. Ohio 2013)). Further, Defendant BWI argues that this Court's decision to decline to dismiss BWI and Wyndham for lack of personal jurisdiction and to transfer the matter to the Middle District of Florida was entirely unrelated to its analysis of whether the TVPRA affords Plaintiff nationwide service of process. (ECF Nos. 165 at 3). Because it is irrelevant to this Court's ultimate decision, BWI maintains that it cannot be a controlling question of law. (*Id.*). Defendants Red Roof and Wyndham add that a ruling on this question would not terminate this particular action because the case can proceed in Florida, and this Court has indicated that venue is proper there. (ECF Nos. 166 at 4; 167 at 3). Plaintiff counters that Defendants are mistaken because the whole basis for this Court's opinion (ECF No. 134) was to determine the jurisdictional reach of the TVPRA. (ECF No. 168 at 2). This controlling question, Plaintiff maintains, *could* materially affect the outcome of the litigation in the district court, which is sufficient to meet the first prong of the interlocutory appeal test. (*Id.*).

Although certification of questions for interlocutory appeal is meant to occur sparingly, a movant simply must show that resolution of the issue on appeal would materially affect the

7

outcome of the litigation in the district court. *In re Baker*, 954 F. 2d at 1172 n. 8 (6th Cir. 1992). Generally, federal courts have adopted the position that "a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants." Wright & Miller, § 3930 Criteria for Permissive Appeal, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.) (citing *Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.*, 86 F. 3d 656, 658–659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."); *Kuehner v. Dickinson & Co.*, 84 F. 3d 316, 318–319 (9th Cir. 1996) (explaining that issues collateral to the merits can be controlling questions if "it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter")); *see also Winnett v. Caterpillar, Inc.*, 553 F. 3d 1000, 1008 (6th Cir. 2009) (acknowledging that the circuit court's ruling could save the parties and the court significant resources because to reverse the district court would resolve the majority of claims at issue).

It is well established that a question of law is controlling if reversal of the district court's order would terminate the action. *See Bank of N.Y. Mellon v. Wolfe,* 2:15-cv-02662, 2016 WL 879999, at *7 (Mar. 8, 2016) (finding that the question of whether the bank was a creditor did not control the disposition of the stay motion); *Jackson Cnty v. Employees' Ret. Sys. v. Ghosn*, No. 3:18-CV-01368, 2021 WL 2400302, at *3 (M.D. Tenn. June 11, 2021) (concluding that the district court's order addressed a controlling question of law because the Court would lack personal jurisdiction over one set of Plaintiff's claims if the circuit court decided pendent personal jurisdiction did not apply); *Phoenix Process Equip. Co. v. Cap. Equip.& Trading Corp.*, 250 F. Supp. 3d 296, 304 (W.D. Ken. 2017) (explaining that personal jurisdiction was a controlling question of law in the matter because all claims against defendants would be dismissed if no

jurisdiction existed over them); *cf. In re Watson*, 309 B.R. 652, 659 (1st Cir. BAP 2004) ("A question of law controls the outcome of the underlying case if no alternate theory exists on which the party could succeed.") On the other hand, findings that a question is not controlling are generally fact specific. *See e.g., In re Energy Conversion Devices, Inc.*, 638 B.R. 81, 90 (E.D. Mich. 2022) (explaining that although standing is generally considered a controlling question of law, the bankruptcy court did not find, as a matter of law, that trusts have standing to pursue litigation after termination of the trust, yet in the present matter, the terms of the trust at issue gave the trust the authority and responsibility to pursue adversary proceedings).

The question for which Plaintiff seeks certification falls somewhere on the middle of the aforementioned spectrum of what does or does not constitute a controlling question of law. A decision by the Sixth Circuit that the TVPRA does provide nationwide service of process would provide Plaintiff the necessary personal jurisdiction to maintain her claims against Defendant Wyndham and BWI in the Southern District of Ohio. This outcome weighs in favor of Plaintiff because the claims against two of the defendants would not be dismissed for want of personal jurisdiction. As detailed more fully below, however, a favorable appellate ruling for Plaintiff does not prevent this case from being retransferred to Florida for the convenience of the parties under 28 U.S.C. § 1406. A decision in either direction, however, would not only not terminate the action, but would only serve to prolong litigation. While a ruling that the TVPRA provides for nationwide service of process may have a large impact on litigation nationwide, it is unlikely to impact substantively the outcome of the present litigation which can continue in another district court. This weighs against Plaintiff. Because the issue of whether Plaintiff's question is a controlling question of law is a close one and because Plaintiff's Motion fails the other two required prongs to achieve certification, however, this Court declines to find in favor of either party.

### B. Substantial Grounds for Difference of Opinion

Plaintiff alleges that the question of whether victims trafficked across numerous jurisdictions can file their case in any federal court in the country is difficult, novel, and one of first impression in this or any other circuit. (ECF No. 162 at 7–8). Plaintiff argues that "[i]n the absence of guidance from the Sixth Circuit, adult survivors of sex trafficking will not be able to bring their case anywhere." (ECF No. 168 at 3). Plaintiff alleges that for survivors trafficked all over the country, they would be required to file suit in each county and state where they were trafficked which would be difficult and impractical. (*Id.*). Additionally, Plaintiff maintains that Congress intentionally wrote the TVPRA to be broad in its legislative aims. (ECF No. 162 at 8). Because the goals of the TVPRA represent a national priority, the Plaintiff argues addressing this jurisdictional question is important to avoiding multiple contradictory opinions. (*Id.* at 9).

Defendants counter that just because this Court addressed an issue of first impression in its July 1, 2021 ruling (ECF No. 134) "does nothing to demonstrate a substantial ground for difference of opinion" as to the correctness of that ruling, especially where a movant's interpretation of the statute contradicts the plain language of the statute's text. (ECF Nos. 165 at 4 (citing *U.S. v. Atlas Lederer Co.*, 174 F. Supp. 2d 666, 669 (S.D. Ohio 2001); 166 at 5; 167 at 5). Defendant Red Roof cites this Court's prior opinion for the assertion that Plaintiff's references to other federal statutes authorizing nationwide service of process "only underscore that the TVPRA does not contain such a provision." (ECF Nos. 166 at 5 (citing ECF No. 134 at 20–21); 167 at 6). Therefore, Defendants conclude that this Court foreclosed the argument that "a substantial difference of opinion exists for statutory interpretation" when it concluded that "Section 1596 of the TVPRA comports with a plain, obvious, and rational meaning." (ECF Nos. 165 at 4; 166 at 6).

10

A difference of opinion is established where: "(1) the case is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *U.S. ex rel. Elliott*, 845 F. Supp. 2d at 866 (quoting *In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d 844, 849 (W.D. Tenn. 2010)). Plaintiff's argument fails to meet any of the three required prongs.

As this Court has previously articulated, whether the TVPRA confers nationwide service of process is not a difficult or complex issue but requires standard statutory interpretation. (ECF No. 134 at 18–20). Section 1596 is devoid of any reference to the concept of "service of process" let alone nationwide service of process. (*Id.* at 18). The provision serves only to provide court's jurisdiction over offenses in violation of the TVPRA committed outside of the United States. (*Id.*). Even 18 U.S.C. § 1595, which provides the procedural rules for civil suits under the TVPRA, does not reference service of process. This Court's interpretation of the statutory provision at issue is "in line with the Supreme Court's maxim that 'the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.'" (ECF No. 124 at 18–19 (quoting *Chandler v. Roudebush*, 425 U.S. 840, 848 (1976)). Where nationwide service of process has been found to have been authorized, Congress uses plain, unambiguous language in changing service of process rules. *See, e.g.*, Racketeer Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1965(a) (service of process for most RICO actions or proceedings "may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs"); Clayton Act, 15 U.S.C. § 22 ("Any suit, action, or proceeding under the antitrust laws against a corporation may be brought . . . in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of

11

which it is an inhabitant, or wherever it may be found."); Securities Exchange Act of 1934, 15 U.S.C. § 78aa (suits "may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found"); Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1332(e)(2) (suits "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found"); Children's Online Privacy Protection Act, 15 U.S.C. § 6504(e)(2) (in civil actions, process may be served "in any district in which the defendant (A) is an inhabitant; or (B) may be found"). Unlike in the aforementioned examples, Congress chose *not* to add similar language to § 1596 of the TVPRA.

Further, whether this question is an issue of first impression does not have any bearing on how to apply the rules of statutory interpretation. Novelty and difficulty are not synonymous. Finally, there is no conflicting authority on the issue within the Sixth Circuit or any other federal circuit. Because the weight of authority favors a standard interpretation of this provision as not providing for nationwide service of process, there exist no substantial grounds for difference of opinion, but instead points to a simple conclusion of how § 1596 should be interpreted.

### C.  Materially Advance Termination of the Litigation

Plaintiff argues that an immediate appeal will save judicial resources by keeping the case in Ohio because this Court has experience litigating this issue as similar TVPRA cases against hotel brands are currently pending in this district. (ECF No. 162 at 10). Additionally, Plaintiff maintains that immediate resolution of this question by the Sixth Circuit would "provide greater certainty and predictability as to the boundaries of the TVPRA for victims of sex trafficking to

bring cases across the country." (*Id.* at 11; 168 at 4). Finally, Plaintiff maintains that resolution of this issue will prevent future litigation on jurisdictional questions. (ECF Nos. 162 at 11; 168 at 4).

Defendant BWI counters Plaintiff's assertion that this Court has experience in handling TVPRA litigation, by citing to twenty-nine (29) pending cases over which District Judge John E. Steel of the Middle District of Florida, who presided over this case upon its transfer to Florida, currently presides. (ECF No. 165 at 5). Therefore, Defendant BWI argues, the Middle District of Florida is just as capable as this Court in advancing and resolving this particular matter. (*Id.* at 6). Plaintiff correctly counters, however, that the twenty-nine cases represent only two total Plaintiffs who filed civil actions under the TVPRA against each defendant separately. (ECF No. 168 at 4 n. 1). Defendant BWI also argues that a holding that the TVPRA affords nationwide services of process "would generate *less* certainty and predictability, as it would effectively decimate jurisdictional boundaries." (ECF No. 165 at 6).

All defendants argue that an interlocutory appeal would not advance the termination of this litigation but would only serve to prolong the matter. (ECF Nos. 165 at 6–7; 166 at 6–7) Defendants reason that Plaintiff provides no basis for the assertion that this Court could litigate the matter more quickly than the Middle District of Florida. (ECF No. 165 at 7; 166 at 6–7; 167 at 7). Even if Plaintiff were to receive a favorable ruling on appeal, her case would not terminate as Plaintiff could continue the litigation in Ohio or Florida, depending on this Court's ruling upon remand. (*Id.*).

An interlocutory appeal will "materially advance litigation if it will save 'substantial judicial resources and litigant expense.'" *U.S. ex rel. Elliott*, 845 F. Supp. 2d at 871 (quoting *City of Memphis*, 293 F. 3d at 350). As a result, an interlocutory appeal is "more appropriate early in the proceedings, particularly in protracted and expensive cases, where failure to resolve a question

of law early in the case could lead to the placement of an enormous burden on the parties." *In re Regions*, 741 F. Supp. 2d at 849 (quoting *Black & Decker, Inc. v. Smith*, No. 07-1201, 2008 WL 3850825, at *10 (W.D. Tenn. Aug. 13, 2008). When litigation can be conducted "in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F. 3d at 351 (quoting *White v. Nix*, 43 F. 3d 374, 377 (8th Cir. 1994)).

The third factor—that an immediate appeal may materially advance the termination of litigation—follows from the second. Asking the Court of Appeals to weigh in on an issue for which there is no substantial ground for disagreement serves to prolong litigation, not to shorten it. To grant Plaintiff's Motion would likely not act to advance the termination of the litigation but result in an extended litigation timeline. Regardless of Sixth Circuit's ruling on the matter, Plaintiff's claims would remain to be litigated in the same manner as before, whether in this Court or by the Middle District of Florida. Therefore, an immediate appeal of this question would not materially advance the ultimate *termination* of the litigation. In fact, under the circumstances present here, "an interlocutory appeal is as likely to cause material delay as it is to cause material advancement of the termination of the litigation." *Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884, 892 (S.D. Ohio Apr. 24, 2013). Accordingly, the more efficient course is to move the case forward by denying certification of this question for interlocutory appeal.

As Plaintiff has failed to meet any of the three prongs required to certify a question for interlocutory appeal, this Court **DENIES** Plaintiff's Motion.

### IV.   VENUE TRANSFER

This Court previously concluded that venue in the Southern District of Ohio was improper because this Court does not have personal jurisdiction over Defendants BWI and Wyndham and

14

Plaintiff's claim does not meet any other requirements for proper venue under 28 U.S.C. § 1391. (ECF No. 127 at 13–14). Instead of dismissing the parties, however, this Court found that venue transfer was the proper remedy. (*Id.* at 13). Additionally, this Court concluded that even though venue in the Southern District of Ohio was proper for Defendant Red Roof, there was a strong interest in litigating this case where the trafficking events occurred, including access to evidence and witnesses located in Florida. (*Id.* at 14). As a result, this Court concluded that it would cause unnecessary inconvenience and expense to both parties to litigate this case in Ohio. (*Id.* at 15). This Court ordered that this matter be transferred to the Middle District of Florida on February 16, 2021, pursuant to 28 U.S.C. § 1406 which allows "[t]he district court of a district in which is filed a case laying venue in the wrong division or district" to "dismiss or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." (*Id.* at 14).

It is well established that "a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over defendants." *Jackson v. L&F Martin Landscape*, 421 Fed. App'x 482, 483 (6th Cir. 2009) (quoting *Pittock v. Otis Elevator Co.*, 8 F. 3d 325, 329 (6th Cir. 1993)). Section 1406 and 28 U.S.C. § 1631—which states that when a court "finds that there is a want of jurisdiction," it "shall, if it is in the interest of justice, transfer such action . . . to any other court in which the action . . . could have been brought"—however, provide this Court the necessary jurisdiction to transfer this matter. *See also Jackson*, 421 Fed. App'x at 483 (explaining that 28 U.S.C. § 1631 expressly and specifically provides for the transfer of cases in which the original court finds a "want of [personal] jurisdiction"). In evaluating a motion to transfer venue, a court may consider factors such as access to proof, witnesses' ability to attend trial, enforceability of any judgment rendered, and "prevent[ing] unnecessary waste of time, energy and money and to protect witnesses and the public interest against unnecessary

inconvenience and expense." *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, No. 2:06-cv-0937, 2007 WL 2781669, at *2 (S.D. Ohio Sept. 24, 2007) (citing *Rowe v. Chrysler Corp.*, 520 F. Supp 15 (E.D. Mich. 1981)).

This Court's analysis of appropriate venue has not changed. This Court lacks personal jurisdiction over Defendants BWI and Wyndham because the Southern District of Ohio lacks personal jurisdiction over both, meaning venue is improper as neither can be deemed to reside here. 28 U.S.C. § 1391(c)–(d). Although venue is proper over Defendant Red Roof in the Southern District of Ohio, there is a strong interest in litigating the matter in Florida where C.T. was allegedly trafficked and evidence and witnesses can be more easily accessed. Because the Sixth Circuit has held that, "[t]he decision of whether to dismiss or transfer is within the district court's sound discretion," this Court again exercises its discretion to transfer this matter to the Middle District of Florida. *First of Mich. Corp. v. Bramlet*, 141 F. 3d 260, 262 (6th Cir. 1998).

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Appeal pursuant to 28 U.S.C. § 1292(b) is **DENIED**. In accord with this Court's February 16, 2021 Opinion and Order (ECF No. 127), this matter is hereby **TRANSFERRED** to the Middle District of Florida.

IT IS SO ORDERED.

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

DATE:  December 30, 2022